**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **BRENTT SHERWOOD,** | : | |
| | : | |
| Petitioner, | : | Civil No. 1:10-CV-1073 |
| | : | |
| v. | : | (Judge Conner) |
| | : | |
| **JEFFREY BEARD, et al.,** | : | (Magistrate Judge Carlson) |
| | : | |
| Respondents. | : | |

**REPORT AND RECOMMENDATION**

**I.      INTRODUCTION**

This case is a federal habeas corpus petition filed on behalf of Brentt Sherwood, a state prisoner who is facing a death sentence following his conviction for murder in the beating death of a four-year old girl. All parties concede that the federal habeas corpus petition filed on behalf of Sherwood is not ripe for resolution since Sherwood has yet to exhaust his post-conviction remedies in state court, as he is required to do by 28 U.S.C. §2254. Therefore, the merits of this petition are not before us.

Rather, what is before this court is a question concerning the proper course to follow in addressing what is undeniably a premature federal habeas corpus petition brought by a state prisoner. In this case, the district court originally dealt with this petition by following a course expressly approved by the United States Supreme

Court, and dismissed the petition without prejudice to refiling, if necessary, once Sherwood has fully exhausted his state post-conviction remedies. In reaching this conclusion, the district court considered, but rejected, Sherwood's invitation to stay this petition and hold it in abeyance for the years while this on-going state court litigation drew to a conclusion.

Sherwood has now filed a motion to alter this judgment which is in essence a motion to reconsider the denial of this stay request. (Doc. 30.) This motion has been referred to the undersigned for consideration. (Doc. 35.) The motion has been fully briefed by the parties, (Docs. 33, 37, 38, and 39.), and is now ripe for resolution.

For the reasons set forth below, it is recommended that this motion to reconsider be denied.

## II. FACTUAL AND PROCEDURAL BACKGROUND

This case arises out of the bludgeoning death of a small child. The factual background of this case was aptly summarized by the Pennsylvania Supreme Court in the following terms:

> The instant matter arose out of the beating death of [Sherwood]'s four year old step-daughter, Marlee Reed, on December 7, 2004. At about 1:00 p.m. that day, [Sherwood], who was home baby-sitting Marlee, called 911 and reported that she had passed out. When EMTs arrived, they observed that the child's skin showed cyanosis, and that she had significant bruising on her abdomen, chest, arms, legs, neck, and face, she did not have a discernible heartbeat, and was not breathing. The

> EMTs asked [Sherwood] what had happened to the child and he told them that he had just awakened and found her in that condition. He then added that she had fallen. The EMTs tried, unsuccessfully, to revive the child for thirty minutes and then took her to Sunbury Community Hospital where additional efforts were made to revive her. Although doctors were able to restore some vital functions, Marlee did not regain consciousness. Marlee was then flown by helicopter to Geisinger Medical Center where she died the next morning having never regained consciousness.
>
> In addition to calling 911, [Sherwood] had also telephoned his wife Heather Goodeliunas, Marlee's mother, and told her that she had to come home immediately because Marlee was not breathing. Ms. Goodeliunas hurried home and as she entered the residence, [Sherwood] began apologizing to her, saying repeatedly, "I'm so sorry baby." In addition, Ms. Goodeliunas received a telephone call from [Sherwood] after he had been taken to police headquarters during which he stated, "Do you think I would put myself at risk for going to jail for the rest of my life for manslaughter?"
>
> Although [Sherwood] never spoke to Ms. Goodeliunas again, he did send her letters. In a letter dated December 10, 2004, he wrote, "I am so sorry about what happened. I know that a million sorries wouldn't make up for what happened." [Sherwood] added, "Right now I feel like the lowest piece of [expletive deleted] that I could ever think of, and rightfully so. I feel like I let you down." [Sherwood] ended the letter by writing, "I hope I hear from you soon so I can explain myself."

Commonwealth v. Sherwood, 603 Pa. 92, 98-101, 982 A.2d 483, 486-89 (2009).

Sherwood was detained by police and initially made some statements indicating that he wished counsel. However:

> On December 9, 2004, Corporal Richard Bramhall of the Pennsylvania State Police went to county prison to speak to [Sherwood]. After the Corporal told [Sherwood] that he considered [Sherwood]'s remark two days earlier about feeling as though he needed an attorney to be

3

ambiguous and not a clear invocation of the right to counsel, the corporal administered <u>Miranda</u> warnings to [Sherwood]. [Sherwood] waived his *Miranda* rights and provided a statement wherein he admitted that he had beaten the child to death (the "December 9 Statement"). In the December 9 Statement, [Sherwood] said that he was home watching Marlee and became angry because she said that she did not want to be there with [Sherwood]. As a result, he slapped the child in the face.

In the December 9 Statement, [Sherwood] said that a couple of hours after he slapped Marlee, they watched a movie. Afterwards Marlee said to [Sherwood] that she felt sorry for him. When he asked why, she said, "Because you're mean." Upon hearing Marlee's response, [Sherwood] said he "snapped" and punched Marlee in the stomach with a closed fist and kicked her in her stomach or back, which caused her to fall to the floor. He then kicked her several times more in her stomach and back and also punched her as she lay on the floor. Marlee asked him to stop and tried to stand. She was unable to get to her feet and fell back to the floor where she was struck some more by [Sherwood]. According to the December 9 Statement, Marlee eventually got up and ran into a bedroom where [Sherwood] punched her again and caused her to fall; he continued to kick and punch her. The beating, [Sherwood] stated, continued even though Marlee pleaded for him to stop.

According to [Sherwood], the beating lasted ten minutes in total and he stopped hitting Marlee a couple of times before again resuming his assault. [Sherwood] had no explanation as to why he resumed the assault after twice stopping and indicated that when he finally ended the assault, he knew that he had "done something bad."

<u>Id</u>.

On the basis of this evidence linking Sherwood to the death of the child entrusted to his care, the petitioner was charged with first degree murder, tried, convicted, and sentenced to death. Protracted proceedings then ensued both in state

and federal court.  Thus, the Northumberland County Court of Common Pleas sentenced Sherwood to death on July 30, 2007.  <u>Commonwealth v. Sherwood</u>, No. CP-49-CR-0000342-2005 (Northumb. C.P.).  On November 6, 2009, the Pennsylvania Supreme Court affirmed Sherwood's conviction.  <u>Commonwealth v. Sherwood</u>, 603 Pa. 92, 982 A.2d 483(2009).  The United States Supreme Court then denied Sherwood's timely petition for certiorari review on May 3, 2010.  <u>Sherwood v. Commonwealth</u>, 130 S. Ct. 2415 (2010).

Approximately 100 days later, on August 11, 2010, Sherwood filed a *pro se* petition for post-conviction relief in Pennsylvania state court under Pennsylvania's Post-Conviction Relief Act ("PCRA"). (Doc. 26, at 2.).  At the time that he filed this state PCRA petition, whose full litigation is a prerequisite to the filing of a federal habeas corpus petition, Sherwood had already initiated this federal habeas action through a filing seeking appointment of counsel on May 19, 2010.  (Doc. 1.)  This court directed Sherwood to file his federal petition for a writ of habeas corpus on or before February 24, 2011.  (Doc. 7.)  After securing four extensions of time, Sherwood filed his petition with the court on October 3, 2011.  (Doc. 22.)  On October 14, 2011, Sherwood then filed a motion to stay the federal proceedings to permit him to exhaust his remedies in state court.  (Doc. 26.)

After full briefing by the parties, this court denied Sherwood's motion for stay on December 30, 2011, (Doc. 29.), and instead dismissed this petition without prejudice. In reaching this conclusion, the district court found that a stay was unnecessary since only 100 days had elapsed under the one-year statute of limitations which applies to federal habeas petitions, and that limitations period was tolled while Sherwood pursued his state PCRA litigation. (Id.) Since there would remain 265 days of untolled time in which to file a federal habeas corpus petition, if necessary, upon completion of the pending state court litigation, the district court reasoned that a stay was unnecessary and chose instead to dismiss this petition without prejudice.

Sherwood then filed the instant motion seeking reconsideration of this ruling denying his motion for stay. (Doc. 30.)

### III. DISCUSSION

#### A. Motions to Reconsider, Rule 59 – Legal Standards

In this case, Sherwood seeks reconsideration of a discretionary decision denying his request for a stay of this undeniably premature federal habeas corpus petition while the petitioner engages in protracted state court post-conviction litigation, litigation which is a legal prerequisite to consideration of the merits of this petition.

6

The legal standards that govern motions to reconsider are both clear, and clearly compelling. "The purpose of a motion for reconsideration is to correct manifest errors of law or fact or to present newly discovered evidence." Harsco Corp. v. Zlotnicki, 779 F.2d 906, 909 (3d Cir. 1985). Typically such a motion should only be granted in three, narrowly defined circumstances, where there is either: "(1) [an] intervening change in controlling law, (2) availability of new evidence not previously available, or (3) need to correct a clear error of law or prevent manifest injustice". Dodge v. Susquehanna Univ., 796 F.Supp. 829, 830 (M.D. Pa. 1992 ). As the United States Court of Appeals for the Third Circuit has aptly observed:

> "The purpose of a motion for reconsideration ... is to correct manifest errors of law or fact or to present newly discovered evidence." Max's Seafood Café, 176 F.3d at 677 (quoting Harsco Corp. v. Zlotnicki, 779 F.2d 906, 909 (3d Cir.1985)). "Accordingly, a judgment may be altered or amended if the party seeking reconsideration shows at least one of the following grounds: (1) an intervening change in the controlling law; (2) the availability of new evidence that was not available when the court granted the motion for summary judgment; or (3) the need to correct a clear error of law or fact or to prevent manifest injustice." Id. (citation omitted).
>
> Howard Hess Dental Laboratories Inc. v. Dentsply Intern., Inc., 602 F.3d

237, 251 (3d Cir. 2010).

The scope of a motion for reconsideration under Rule 59(e) is "extremely limited." Id. Thus, it is well-settled that a mere disagreement with the court does not

translate into the type of clear error of law which justifies reconsideration of a ruling. Dodge, 796 F.Supp. at 830. Furthermore, "[b]ecause federal courts have a strong interest in the finality of judgments, motions for reconsideration should be granted sparingly." Continental Casualty Co. v. Diversified Indus., Inc., 884 F.Supp. 937, 943 (E.D. Pa. 1995). Moreover, it is evident that a motion for reconsideration is not a tool to re-litigate and reargue issues which have already been considered and disposed of by the court. Dodge, 796 F.Supp. at 830. Rather, such a motion is appropriate only where the court has misunderstood a party or where there has been a significant change in law or facts since the court originally ruled on that issue. See Above the Belt, Inc. v. Mel Bohannon Roofing, Inc., 99 F.R.D. 99, 101 (E.D. Va. 1983).

### B. Motions to Stay

These exacting legal standards which govern motions to reconsider apply with particular force to motions that seek to reconsider the denial of stays in habeas corpus proceedings. As a general rule, it is well-settled that decisions regarding requests for stay rest in the sound discretion of the court. See Miller v. Ashcroft, 76 F. App'x 457, 461 (3d Cir. 2003). Under this abuse of discretion standard, a trial court's decision regarding a request to stay litigation or extend deadlines in a case will not be disturbed "'except upon the clearest showing that the procedures have resulted in

actual and substantial prejudice to the complaining litigant'" Id. (citations omitted). Thus, as a threshold matter, this motion to reconsider necessarily invites us to find a need to "correct manifest errors of law or fact," Harsco Corp. v. Zlotnicki, 779 F.2d 906, 909 (3d Cir. 1985), in an area of the law that plainly rests in the sound discretion of the court, where that discretion need not be disturbed "'except upon the clearest showing that the procedures have resulted in actual and substantial prejudice to the complaining litigant.'" Miller v. Ashcroft, 76 F. App'x 457, 461 (3d Cir. 2003).

Moreover, in federal habeas corpus litigation additional considerations apply, considerations which caution against casually entering orders to stay plainly unexhausted federal habeas corpus petitions while state inmates litigate claims in state court. State prisoners seeking relief under Section 2254 must also satisfy specific, and precise, procedural standards. Among these procedural prerequisites is a requirement that the petitioner "has exhausted the remedies available in the courts of the State" before seeking relief in federal court. 28 U.S.C. § 2254(b). In instances where a state prisoner has failed to exhaust the legal remedies available to him in the state courts, federal courts typically will refuse to entertain a petition for habeas corpus. See Whitney v. Horn, 280 F.3d. 240, 250 (3d Cir. 2002).

This statutory exhaustion requirement is rooted in principles of comity and reflects the fundamental idea that the state should be given the initial opportunity to

pass upon and correct alleged violations of the petitioner's constitutional rights. O'Sullivan v. Boerckel, 526 U.S. 838, 844 (1999). As the Supreme Court has aptly observed: "a rigorously enforced total exhaustion rule" is necessary in our dual system of government to prevent a federal district court from upsetting a state court decision without first providing the state courts the opportunity to correct a constitutional violation. Rose v. Lundy, 455 U.S. 509, 518 (1982). Requiring exhaustion of claims in state court also promotes the important goal of ensuring that a complete factual record is created to aid the federal courts in their review of a § 2254 petition. Walker v. Vaughn, 53 F.3d 609, 614 (3d Cir. 1995). A petitioner seeking to invoke the writ of habeas corpus, therefore, bears the burden of showing that all of the claims alleged have been "fairly presented" to the state courts, and the claims brought in federal court must be the "substantial equivalent" of those presented to the state courts. Evans v. Court of Common Pleas, 959 F.2d 1227, 1231 (3d Cir. 1992); Santana v. Fenton, 685 F.2d 71, 73-74 (3d Cir. 1982). A petitioner cannot avoid this responsibility merely by suggesting that he is unlikely to succeed in seeking state relief, since it is well-settled that a claim of "likely futility on the merits does not excuse failure to exhaust a claim in state court." Parker v. Kelchner, 429 F.3d 58, 63 (3d Cir. 2005).

When presented with legal claims in a habeas corpus petition which have not yet been exhausted in the state legal system, a federal court has several courses available to it. First, the court can dismiss the petition without prejudice, so that the petitioner can either return to state court and totally exhaust his claims, or proceed in federal court on a petition which raises only wholly exhausted issues. See Rose v. Lundy, 455 U.S. 509 (1982). This total exhaustion approach facilitates the important goals of federalism and comity that are essential to the exhaustion rule, and allows for complete legal and factual development of these cases in the state legal system before petitions are presented in federal court.

However, because strict compliance with this total exhaustion rule can create procedural dilemmas for some petitioners, who may be unable to fully exhaust state remedies on their petitions before the one-year statute of limitations prescribed for state habeas petitions elapses, the courts have also adopted another procedure which may be employed in a limited number of cases, a "stay and abeyance" procedure in which the federal habeas petition is stayed pending exhaustion of state remedies by the petitioner. Rhines v. Weber, 544 U.S. 269 (2005). Yet, while granting a stay and abeyance is an available procedure, it is not a preferred course of action in these cases. Because a "stay and abeyance" procedure, if used too frequently, can

undermine the policies favoring prompt and orderly resolution of state habeas petitions, the Supreme Court has held that:

> [S]tay and abeyance should be available only in limited circumstances. Because granting a stay effectively excuses a petitioner's failure to present his claims first to the state courts, stay and abeyance is only appropriate when the district court determines there was good cause for the petitioner's failure to exhaust his claims first in state court. Moreover, even if a petitioner had good cause for that failure, the district court would abuse its discretion if it were to grant him a stay when his unexhausted claims are plainly meritless.

Rhines v. Weber, 544 U.S. at 277. Therefore, in order to qualify for a stay and abeyance a petitioner should "satisf[y] the three requirements for a stay as laid out in Rhines: good cause, potentially meritorious claims, and a lack of intentionally dilatory litigation tactics." Heleva v. Brooks, 581 F.3d 187, 192 (3d. Cir.2009).

In practice, mindful of the fact that "stay and abeyance should be available only in limited circumstances," Rhines v. Weber, 544 U.S. at 277, courts have turned to stay and abeyance in lieu of dismissal only in those instances where there is some genuine and well-founded concern that the pending state proceedings might not adequately toll the statute of limitations, and dismissal of the premature petition would result in the imposition of a statute of limitations bar at some future time. Thus, a stay may be appropriate if there is "reasonable confusion" regarding whether the petitioner's state post-conviction filings are timely and would properly act to toll

the statute of limitations. Pace v. DeGuglielmo, 544 U.S. 408, 416 (2005). However, in the absence of such evidence suggesting that a genuine and immediate peril exists under the statute of limitations, courts may in the exercise of their discretion decline stay requests where the record reveals that there remains ample, untolled time under AEDPA's one-year statute of limitations for the filing of a federal habeas corpus petition once the state post-conviction litigation has drawn to a close. See, e.g., Housman v. Wetzel, 1:CV-11-0167, 2012 WL 983551 (M.D. Pa. Mar. 22, 2012)("once Housman exhausts his claims through the PCRA process, he will have 109 days remaining on his one-year limitation period in which to file a timely habeas petition. Because there is no real danger that failing to stay the proceedings on Housman's federal petition will result in his federal claims becoming time barred, entering a stay in this matter is not warranted"); Rullan v. Balicki, CIV.A. 11-4497 NLH, 2011 WL 6129818 (D.N.J. Dec. 7, 2011)(denying stay since Rullan would have 203 days remaining on the 365–day statute of limitations at the time the New Jersey courts finally resolved his petition for post-conviction relief); Walter v. Beard, No. 1:09–CV–2465, 2011 WL 5593125 (M.D.Pa. Nov.17 2011)(refusing to grant a stay in a capital habeas proceeding when the petitioner would have 256 days to file a timely habeas petition after exhausting her claims in state court); Cummings v. Beard, No. 09–cv–4033, 2011 WL 239794 (E.D.Pa. Jan.25, 2011)(concluding that where

petitioner would have 248 days to file a timely habeas petition a stay under Rhines or Heleva was not warranted); Dykeman v. New Jersey, CIV.A. 09-4212 (SDW), 2010 WL 2710578 (D.N.J. July 7, 2010)(denying stay where AEDPA's one year statute of limitations has not yet begun to run).

### C.      Sherwood's Motion to Reconsider Fails

Judged against these benchmarks, Sherwood's motion to reconsider fails. At the outset, nothing in Sherwood's motion demonstrates a need to "correct manifest errors of law or fact," Harsco Corp. v. Zlotnicki, 779 F.2d 906, 909 (3d Cir. 1985), regarding the prior denial of this stay request, a decision that plainly rests in the sound discretion of the court, and a decision that need not be disturbed "'except upon the clearest showing that the procedures have resulted in actual and substantial prejudice to the complaining litigant'" Miller v. Ashcroft, 76 F. App'x  457, 461 (3d Cir. 2003).

Furthermore, keeping in mind that in federal habeas corpus litigation "stay and abeyance should be available only in limited circumstances," Rhines v. Weber, 544 U.S. at 277, Sherwood simply has not shown that reconsideration of the decision to decline to grant a stay is essential "to prevent manifest injustice". Dodge v. Susquehanna Univ., 796 F.Supp. 829, 830 (M.D. Pa. 1992).  At the outset, Sherwood has not shown that the district court erred in its initial straightforward application of

AEDPA's tolling provisions, an analysis which led to the conclusion that approximately 265 days remain under the federal statute of limitations once Sherwood completes his state post-conviction litigation. Given the existence of this significant period of untolled time under AEDPA's statute of limitations, the decision to deny a stay falls squarely within the district court's broad discretion, as evidenced by numerous similar cases which have followed an identical course on similar facts.[1]

Nor can Sherwood avail himself of a claim that there is "reasonable confusion" regarding whether the petitioner's state post-conviction filings are timely in order to secure a stay. See Pace v. DeGuglielmo, 544 U.S. 408, 416 (2005). Indeed, in this

---

[1] See, e.g., Housman v. Wetzel, 1:CV-11-0167, 2012 WL 983551 (M.D. Pa. Mar. 22, 2012)("once Housman exhausts his claims through the PCRA process, he will have 109 days remaining on his one-year limitation period in which to file a timely habeas petition. Because there is no real danger that failing to stay the proceedings on Housman's federal petition will result in his federal claims becoming time barred, entering a stay in this matter is not warranted.); Rullan v. Balicki, CIV.A. 11-4497 NLH, 2011 WL 6129818 (D.N.J. Dec. 7, 2011)(denying stay since Rullan would have 203 days remaining on the 365–day statute of limitations at the time the New Jersey courts finally resolved his petition for post-conviction relief); Walter v. Beard, No. 1:09–CV–2465, 2011 WL 5593125 (M.D.Pa. Nov.17 2011) (refusing to grant a stay in a capital habeas proceeding when the petitioner would have 256 days to file a timely habeas petition after exhausting her claims in state court); Cummings v. Beard, No. 09–cv–4033, 2011 WL 239794 (E.D.Pa. Jan.25, 2011) (concluding that where petitioner would have 248 days to file a timely habeas petition a stay under Rhines or Heleva was not warranted); Dykeman v. New Jersey, CIV.A. 09-4212 (SDW), 2010 WL 2710578 (D.N.J. July 7, 2010)(denying stay where AEDPA's one year statute of limitations has not yet begun to run).

15

regard, Sherwood's counsel–highly experienced federal capital habeas litigators–candidly acknowledge that they are "reasonably certain that [Sherwood's] *pro se* PCRA petition is timely filed". (Doc. 33, p.4.) We agree with the assessment of Sherwood's seasoned, and adept, counsel. There is no legitimate dispute that Sherwood's PCRA filings are timely and proper; indeed, the state courts plainly appear to have accepted them as proper timely-filed post-conviction pleadings. In light of counsel's candid concession, Pace provides no grounds for reconsidering the court's prior decision denying a stay. Indeed, reconsideration of this ruling would actually do violence to the principles announced in Pace, which allowed a limited ground for a stay where there was "reasonable confusion" concerning the timeliness of a state post-conviction petition. If we were to grant a stay in this case, we would have to equate the "reasonable confusion" regarding timeliness identified by Pace as a ground for a stay with the reasonable certainty voiced by Sherwood that his state PCRA petition is timely. Since the terms confusion and certainty have very different meanings, it would be unreasonable for this court to equate reasonable confusion with reasonable certainty in order to justify a stay for Sherwood under Pace.

Finally, Sherwood invites the court to reconsider this stay ruling by suggesting once again that a stay is warranted given the possibility that Pennsylvania may at some time in the future take steps to fall within the special opt-in procedures for

capital cases set forth in 28 U.S.C. §§2261 et seq., procedures which could affect and reduce the time period for filing a federal habeas corpus petition, reducing that filing period from 365 days to 180 days. See 28 U.S.C. §2263(a). The difficulty with this argument is that it is wholly hypothetical. It is entirely undisputed that these opt-in procedures do not apply to Pennsylvania, and cannot presently apply to this case. Indeed, for this peril to transform from hypothetical to real at least seven separate events must occur: First, final regulations under §2261 must be promulgated and approved which implement the certification procedures of the statute. Second, Pennsylvania must then subsequently apply for opt-in status. Third, the Commonwealth must satisfy the certification requirements established by law and regulation. Fourth, the Attorney General of the United States must certify the Commonwealth as having properly opted in under the statute. Fifth, the Commonwealth's mechanism for complying with federal opt-in requirements would then have to be deemed to have been enacted on a date prior to Sherwood's initiation of his state PCRA claims. Sixth, the opt-in status of Pennsylvania would also have to be determined to be retroactively applicable to his case. Finally, Sherwood, and his counsel, would have to take no action to preserve his rights prior to the completion of these six steps.

This description of the striking series of circumstances which must first coalesce before Sherwood's fears become reality confirms that the concerns identified by Sherwood's counsel are, at present, simply too evanescent and ephemeral to rise to the level of grounds for a motion to reconsider, which requires a showing of a need "to correct manifest errors of law or fact." Harsco Corp. v. Zlotnicki, 779 F.2d 906, 909 (3d Cir. 1985). Therefore, this currently hypothetical concern does not provide grounds for a motion to reconsider this court's prior order denying a stay in lieu of dismissal of this premature habeas corpus petition.

## IV. RECOMMENDATION

Accordingly, for the foregoing reasons, IT IS HEREBY RECOMMENDED THAT the petitioner's motion to alter or amend the judgment (Doc. 30.) be DENIED.

The parties are further placed on notice that pursuant to Local Rule 72.3:

Any party may object to a magistrate judge's proposed findings, recommendations or report addressing a motion or matter described in 28 U.S.C. § 636 (b)(1)(B) or making a recommendation for the disposition of a prisoner case or a habeas corpus petition within fourteen (14) days after being served with a copy thereof. Such party shall file with the clerk of court, and serve on the magistrate judge and all parties, written objections which shall specifically identify the portions of the proposed findings, recommendations or report to which objection is made and the basis for such objections. The briefing requirements set forth in Local Rule 72.2 shall apply. A judge shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made and may accept, reject, or modify, in whole or in part, the findings or

recommendations made by the magistrate judge. The judge, however, need conduct a new hearing only in his or her discretion or where required by law, and may consider the record developed before the magistrate judge, making his or her own determination on the basis of that record. The judge may also receive further evidence, recall witnesses or recommit the matter to the magistrate judge with instructions.

Submitted this 8th day of August 2012.

*S/Martin C. Carlson*
Martin C. Carlson
United States Magistrate Judge
